UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RENARDO CLARK,

    Petitioner,

v.                                Case No. 3:18-cv-994-MMH-JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

    Respondents.

## ORDER

### I. Status

Petitioner Renardo Clark, an inmate of the Florida penal system, initiated this action with the assistance of counsel on August 15, 2018, by filing a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 (Petition; Doc. 1). Clark is proceeding on an amended petition (Amended Petition; Doc. 5), with exhibits (Pet. Ex.). In the Amended Petition, Clark challenges a 2009 state court (Duval County) conviction for armed robbery, aggravated fleeing, and possession of a firearm by a convicted felon. Clark raises one ground for relief. See Amended Petition at 7-9.[1] Respondents submitted an answer in which they

---

[1] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

moved the Court to dismiss the Amended Petition as untimely but also addressed the merits of the Amended Petition in the alternative. See Answer in Response (Response; Doc. 12) with exhibits (Resp. Ex.). Clark initially filed a brief in reply only as to Respondents' statute of limitations argument. See Clark's Reply to the State's Response (Doc. 13). On April 19, 2021, the Court denied Respondents' request to dismiss the Amended Petition as untimely and directed Clark to file a reply to Respondents' merits analysis. See Doc. 14. Thereafter, Clark filed his supplemental reply. See Petitioner Clark's Reply to State's Response (Reply; Doc. 15). The Amended Petition is ripe for review.

## II. Relevant Procedural History

On March 12, 2007, the State of Florida (State) charged Clark by way of Information with armed robbery (count one), aggravated fleeing or attempting to elude a law enforcement officer (count two), and possession of a firearm by a convicted felon (count three). Resp. Ex. 1 at 15. Following a trial, a jury found Clark guilty as charged in the Information on all three counts. Id. at 65-67. On November 8, 2007, the trial court adjudicated Clark to be a habitual violent felony offender (HVFO) as to counts one, two, and three and a prison releasee reoffender as to count one. Id. at 70-77. The trial court sentenced Clark to a life term of incarceration as to count one and a term of incarceration of fifteen years in prison as to counts two and three. Id. As an HVFO, the trial court imposed a ten-year minimum mandatory sentence as to counts one, two, and

2

three. Resp. Ex. 1 at 76. It also imposed a ten-year minimum mandatory sentence as to count one and a three-year minimum mandatory sentence as to count three because of Clark's actual possession of a firearm during the commission of these offenses. Id. The trial court ordered counts two and three to run concurrently with the sentence imposed on count one. Id. On December 24, 2008, the First District Court of Appeal (First DCA) affirmed Clark's convictions and sentences and issued the mandate on January 9, 2009. Resp. Ex. 7.

On February 9, 2009,[2] Clark filed a pro se motion to correct an illegal sentence under Florida Rule of Criminal Procedure 3.800(a) (Rule 3.800(a) Motion), in which he moved to strike the ten-year HVFO term imposed as to count one. Resp. Ex. 8. The postconviction court denied the Rule 3.800(a) Motion. Resp. Ex. 8. On October 20, 2009, the First DCA reversed the denial of the Rule 3.800(a) Motion and remanded the matter for the postconviction court to strike the HVFO sentence. Resp. Ex. 11. The First DCA issued the mandate on November 17, 2009. Id.

The postconviction court entered an order on remand vacating and setting aside the portions of the judgment that adjudicated Clark as an HVFO

---

[2] Although filed pro se, the Court cannot use the mailbox rule to calculate the date because there is no prison time stamp and Clark did not date his motion. Accordingly, the Court relies on the date the Clerk stamped on the motion.

and imposed the ten-year minimum mandatory term of imprisonment. Resp. Ex. 12. All other provisions of the judgment remained the same. Id.

On January 10, 2011, Clark, with the assistance of counsel, filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 Motion). Resp. Ex. 14 at 1-15. Clark alleged in the Rule 3.850 Motion that his trial counsel was ineffective for failing to object to and cross-examine testimony from the State's DNA expert and call an independent DNA expert. Id. On July 19, 2017, the postconviction court denied relief. Resp. Ex. 17. On August 7, 2018, the First DCA per curiam affirmed the denial of relief, without a written opinion, and issued the mandate on October 3, 2018. Resp. Ex. 20.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v.

4

Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Clark's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

5

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented

6

in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual

7

> determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[3] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were

---

[3] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

8

adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

### B. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a

9

> trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)

10

> (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, - U.S. at -, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

Clark contends that his trial counsel was ineffective for failing to object to testimony from the State's DNA expert, Greg Brock, concerning DNA found on the handle of a gun and failing to adequately cross-examine Brock on this testimony. Amended Petition at 7-9. Additionally, Clark asserts that his counsel should have retained a DNA expert to rebut Brock's conclusions concerning this evidence. Id. At trial, Brock testified that Clark was a possible contributor to a mixture of DNA found on the handle of a gun the State alleged Clark used during the commission of the offenses. Id. at 7-8. According to Clark, "[u]nder Florida law it was improper to introduce this testimony without

11

explaining its significance." Id. at 8. Clark maintains that an independent DNA expert "could have explained to the jury that there was no evidentiary significance to the State DNA expert's DNA finding about the DNA on the handle of the gun." Id. Following the trial, Clark's mother retained a DNA expert, Dr. Charlotte Word, who concluded that the trial court should not have permitted Brock's testimony concerning Clark as a possible contributor to the DNA mixture or should have required the testimony be accompanied with an explanation of "their scientific significance[.]" Id. at 8-9. Clark attached Word's reports as exhibits to the Amended Petition.

Clark raised a substantially similar claim in his Rule 3.850 Motion. Resp. Ex. 14 at 1-15. The postconviction court denied relief, explaining in pertinent part:

> Specifically, Defendant claims Mr. Brock should not have been permitted to testify that Defendant was "included as a possible contributor" to the DNA recovered from the handle of the gun without additional testimony explaining population frequency statistics. Defendant cites Brim v. State, 695 So. 2d, 269-70 (Fla. 1997), which holds that both steps of DNA testing must satisfy the Frye[4] test, but also notes:
>
>> This first step of the DNA testing process relies upon principles of molecular biology and chemistry. In oversimplified terms, the results obtained through this first step

---

[4] Frye v. United States, 293 F. 1013 (D.C. Cir. 1923) (superseded by rule as stated in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993)).

in the DNA testing process simply indicate that two DNA samples look the same. A second statistical step is needed to give significance to a match. The need for this second step is explained as follows by the National Research Council (NRC)2: "The insistence on quantitative estimation has been fueled by the observation in the 1992 report that '[t]o say that two patterns match, without providing any scientifically valid estimate (or, at least, an upper bound) of the frequency with which such matches might occur by chance, is meaningless.'["] Certainly, a judge's or juror's untutored impression of how unusual a DNA profile is could be very wrong. This possibility militates in favor of going beyond a simple statement of a match, to give the trier of fact some expert guidance about its probative value.

Defendant has also provided letters from Dr. Charlotte Word wherein she opines that the DNA from the handle of the gun could have been a "match" to as many as 1 in 2 DNA profiles. In other words, half the world could have been "included as a possible contributor." Defendant argues that Mr. Brock's testimony was highly misleading without the context of the population frequency statistics.

Concededly, in hindsight, it would have been better for the jury to hear such testimony to understand the significance of the DNA evidence from the handle of the gun. However, even if counsel was deficient for failing to object, failing to cross-examine Mr. Brock on this subject or call another expert to clarify the population frequency statistics, Defendant cannot prove prejudice.

The charges in this case arose from an incident, followed by a high-speed car chase, which ended when

13

> Defendant crashed and fled on foot into an apartment complex. Although Sgt. Nemeth testified that during the foot chase, he lost sight of Defendant briefly as Defendant ran around a corner, Officer Knecht testified that he was in "parallel pursuit," and saw Defendant run up a stairwell. Police then found Defendant sitting on the stairwell, in the same clothes as the suspect they were chasing, breathing heavily and sweating profusely on a February evening. The victim positively identified Defendant as the person who robbed him.
>
> Defendant [sic] counsel cross-examined Mr. Brock at length, highlighting that Defendant was <u>excluded</u> as a contributor to the DNA on the <u>trigger</u> of the gun. However, the critical piece of DNA evidence was from the steering wheel of the stolen car. Defendant was found to be a match, and Mr. Brock testified that the frequency of the occurrence of that DNA was 1 in 400 trillion Caucasians; 1 in 11 trillion African-Americans, and 1 in 82 trillion Southeastern Hispanics. The gun was found in the car where Defendant's DNA was found on the steering wheel. The victim identified the gun as the one Defendant used in the robbery. Therefore, evidence beyond DNA linked Defendant to the gun.
>
> In sum, objecting, cross-examining or hiring another expert could have all resulted in testimony providing population frequency statistics, which would have apparently diminished the significance of the DNA evidence from the handle of the gun. Nevertheless, even if the jury had heard the population frequency statistics, the outcome of the trial would not have been different. Hence, Defendant has not proven that he was prejudiced by counsel's inaction and he is not entitled to relief.

Resp. Ex. 17 2-4 (record citations omitted). The First DCA per curiam affirmed the denial of relief, without issuing a written opinion. Resp. Ex. 20.

14

To the extent that the First DCA decided the claim on the merits,[5] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Clark is not entitled to relief on the basis of this claim.

This Court agrees with the state court that Clark cannot demonstrate prejudice. At trial, the victim testified that Clark approached him in the parking lot of an apartment complex, told him the victim to give him his money, and showed half of a silver revolver that was inside the pocket of Clark's grey sweatshirt. Resp. Ex. 2 at 25-26. Although the hood of the jacket was covering Clark's head, the victim was still able to observe Clark's face. Id. at 26-27. While at gunpoint, the victim gave Clark six dollars in one-dollar bills and the keys to his car. Id. at 28-29. Clark then drove off in the victim's car. Id. at 29. With the assistance of a bystander and his car, the victim drove after Clark

---

[5] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

while calling 911. Id. at 29-31, 45-46. Clark drove too fast for the victim to follow but by that time police had taken over the chase. Id. at 30-31.

Clark led police on a high-speed chase that started on the interstate and ended at an apartment complex where Clark crashed the victim's vehicle into a fence and fled on foot. Id. at 54-67. Sergeant Matt Nemeth observed Clark, wearing the same gray sweatshirt the victim had told the 911 operator the suspect was wearing, run from the vehicle, at which point Nemeth ran after him. Id. at 67-68. Nemeth lost sight of Clark for ten to twenty seconds as he ran up the exterior stairwell of an apartment building. Id. at 69-71. However, another officer on foot had also seen Clark run up the stairwell and pursued, ultimately arresting Clark, who by that time was sweating profusely and breathing heavily. Id. at 69-71, 96-100. Officers searched Clark and found five-dollars-worth of dollar bills in his pocket. Id. at 100-01, 121.

At the scene of the crash, the vehicle was still running, and the stereo was playing loudly. Id. at 74-75, 126, 130, 159-60. Officers found a fully loaded and operable silver revolver on the floorboard. Id. Police brought the victim to the scene of the crash, where the victim identified his vehicle and positively identified Clark as the assailant. Id. at 32-35, 113-15. According to the victim, there was no doubt in his mind that Clark was the robber. Id. at 42.

No fingerprints of value were found in the vehicle or on the gun. Id. at 150, 153. However, several areas tested positive for DNA. The handle of the

16

gun had a mixture of profiles on it, and Brock testified, without giving statistical data, that Clark was a possible contributor to that mixture. Id. at 186. Notably, during cross-examination, trial counsel elicited testimony from Clark that it was only a possibility that Clark was a contributor to that mixture and that Brock could not say for certain that Clark was a contributor. Id. at 213. This was not the only DNA evidence linking Clark to the crime, though. Brock concluded that Clark's DNA profile matched that of the major contributor to a DNA mixture found on the steering wheel of the stolen vehicle. Id. at 188-96. Clark's own expert agrees with Brock's conclusion that Clark's DNA was on the steering wheel. Resp. Ex. 4 at 2.

Given the existence of Clark's DNA on the steering wheel of the victim's vehicle, the victim's unequivocal in-court and out-of-court identification of Clark, and the pursuing officers' identification of Clark, there is no reasonable probability the outcome of the trial would have been different. Indeed, Clark's own expert would have provided testimony linking Clark to the crimes. In light of the overwhelming evidence identifying Clark as the assailant, Clark has failed to demonstrate prejudice and relief on the claim in the Amended Petition is due to be denied.

## VII. Certificate of Appealability

## Pursuant to 28 U.S.C. § 2253(c)(1)

If Clark seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Clark "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon

consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Amended Petition (Doc. 5) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

3. If Clark appeals the denial of the Amended Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4. The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 19th day of July, 2021.

*[signature]*
**MARCIA MORALES HOWARD**
United States District Judge

Jax-8

C:     Counsel of record
       Renardo Clark #126790